## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA MARTINSBURG

**WILLY SANCHEZ,**

   **Petitioner,**

**v.**           **Civil Action No.: 3:23-CV-238 (GROH)**

**S. BROWN,**

   **Respondent.**

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On November 27, 2023, the Petitioner Willy Sanchez, an inmate incarcerated at Hazelton FCI, acting *pro* se, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, claiming that the BOP is not crediting his First Step Act Earned Time Credits.[1] ECF No. 1 at 1.[2]  The Petitioner paid the filing fee on December 20, 2023. ECF No. 12.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

---

[1] In Ground One of his petition, the Petitioner alleges the BOP is "unlawfully revoking" his First Step Act Earned Time Credits. ECF No. 1 at 5. In his memorandum in support of his petition, the Petitioner alleges he is being "unlawfully denied" the application of his First Step Act Earned Time Credits. ECF No. 1-1 at 2. For the sake of consistency, the undersigned will deem the Petitioner's claim to be that the BOP is denying his right to receive First Step Act credits.

[2] All ECF numbers cited herein are from the instant case, 3:23-CV-238, unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Conviction and Sentence[3]

On May 16, 2019, an indictment was returned in the Southern District of New York charging the Petitioner and two co-defendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. ECF No. 10. On January 3, 2020, the Petitioner was convicted pursuant to his plea of the lesser offense of participating in a conspiracy to distribute and possess with the intent to distribute 500 grams or more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. ECF Nos. 45-2, 45-3. Further, the written plea agreement signed by the Petitioner and his counsel on January 3, 2020, provides that:

> The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. . . . The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status.

ECF No. 45-3 at 5–7.

---

[3] The facts are taken from Petitioner's criminal conviction in the Southern District of New York, in case number 1:19-CR-360, available on PACER. Unless otherwise noted, the ECF entries in sections II.A., II.B., and II.C. refer to that criminal case. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record"); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

The Petitioner was sentenced on June 16, 2021, to a term of 111 months of incarceration, followed by four years of supervised release. ECF No. 85 at 2–3, 89. At the sentencing hearing, Petitioner's counsel acknowledged that the Petitioner knew he was subject to an immigration hold:

> Now unfortunately, we know that he has the immigration hold, so your Honor should consider that as well. Unfortunately, he's going to be deported. He's going to be separated from his ability to care for [his] children. He does have his mother in the Dominican Republic.
>
> [H]e wants to assure the Court that obviously a physical deterrence would be the fact that he will be deported.

ECF No. 89 at 9:19–23, 12:5–6. Counsel for the Government provided a further statement explaining the Petitioner's criminal history and illegal entry into the United States:

> Mr. Sanchez has two prior narcotics convictions. He received a 78-month sentence for one of those. . . He was deported after that conviction. He chose to return illegally to the United States for a second time, and he lived in the United States under a false name. . . . And he, upon returning to the United States illegally, resumed his drug activity, drug distribution, despite his prior experience.

Id. at 14:11–20. In its judgment, the district court included as a special condition of supervision that the Petitioner "must obey the immigration laws and comply with the directives of immigration authorities." ECF Nos. 85 at 5, 89 at 19:3–4.

Thereafter, on January 11, 2022, the Petitioner filed an emergency motion to reduce his sentence, or in the alternative, for a furlough. ECF No. 101. In his motion the Petitioner asks for compassionate release for time served, and to be released to "commence his term of supervised release, or more likely [be] sent to immigration custody to await deportation, as he is not a citizen." Id. at 1. Further, the Petitioner

describes himself as a "deportable illegal alien," but argues he "should be treated and/or afforded the same rights and opportunit[ies] [as] a U.S. citizen." Id. at 9, 11. He further concedes that, "as an illegal alien, he is ineligible to participate in and/or benefit from residential programs which are only offered in some facilities [and] he will not have the opportunity to participate" in a Residential Drug Abuse Program ("RDAP"), or other programs. Id. at 11.

**B.    Direct Appeal**

As a term of his plea agreement, the Petitioner waived his right to file a direct appeal.[4] ECF No. 45-3 at 4.

**C.    Motions to Vacate Pursuant to 28 U.S.C. § 2255**

As a term of his plea agreement, the Petitioner waived his right to file a collateral attack on his conviction through 28 U.S.C. § 2255 and § 2241. ECF No. 45-3 at 4.

**D.    Instant Proceedings Under 28 U.S.C. § 2241**

The Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, on November 27, 2023, wherein he claims that he has been denied credit for 580 accrued program days and 315 days of federal Good Time Credit ("GTC"). ECF No. 1-1 at 2. The Petitioner asserts that from "the onset" of his June 16, 2021, sentence, "it was conveyed to him by counseling staff that he was [ ] eligible to participate in, and benefit from, the implementation of the First Step Act, [ ] and could receive up to 365 days of FSA Earned Time Credits" ("ETCs"). Id.

The Petitioner contends that during his period of incarceration he was informed

---

[4] Despite this agreement, the Petitioner "demanded" that his attorney file a notice of appeal with the United States Court of Appeals for the Second Circuit, in that court's docket number 21-1616. However, the matter was dismissed on December 21, 2023, upon the Petitioner's motion to voluntarily dismiss appeal. ECF No. 119; C.A.2. Cir. 0:2021-CR-01616, ECF Nos. 43, 46.

that the "only disqualifying factor in receiving the aforementioned FSA ETC was an Immigration and Customs Enforcement ["ICE"] detainer." Id. at 2. Further, the Petitioner argues that the BOP issued a Change Notice on February 6, 2023, which modified Program Statement 5410.01. Id. at 3. The Petitioner asserts that under the Change Notice he is entitled to have his ETCs applied towards his release or supervised release dates. However, the Petitioner claims that his application has been denied, based on his detainer and "alleged final order of removal," which he states he never received until the BOP's denial of his administrative remedy on October 16, 2023. Id. at 3–4 (emphasis in original).[5] The Petitioner argues that until he is proven to violate United States immigration policy, he is eligible to have accrued ETCs applied toward his sentence. Id. at 4.

Although the Petitioner acknowledges his failure to exhaust his administrative remedies prior to filing his claim, he contends that his failure to exhaust should be excused because he has "already begun pursuing administrative remedies." Id. at 5.

As relief, the Petitioner asks the Court to order the BOP to restore his First Step Act ETC credits toward his sentence, because his deportation status is "unresolved." ECF Nos. 1 at 7, 1-1 at 7.

The Respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and memorandum in support thereof on January 17, 2024, along with five exhibits. ECF Nos. 17, 18, 18-1 through 18-5. In the memorandum, the Respondent argues that the Petitioner failed to exhaust his administrative remedies

---

[5] The Petitioner further asserts that contrary to the United States immigration laws, he has never received a copy of the final order of deportation, Detainer Action letter, or a warrant for removal or deportation. ECF No. 1-1 at 4.

prior to filing the instant action. ECF No. 18 at 2, 5–7. The Respondent contends that the Petitioner has filed six administrative remedies during his incarceration, including "two remedies requesting FSA credit but failed to properly exhaust" those claims. Id. at 7. The two administrative remedies related to FSA credit were: (1) Remedy ID number 1174830-F1 was submitted to the institution on September 7, 2023; (2) Remedy ID number 1174830-R1 was submitted to the Regional Office on October 24, 2023, and closed with an explanation. Id. However, the Petitioner filed this action prior to receiving a response from the Regional Office and prior to appealing the matter to the Central Office. ECF Nos. 18 at 7, 18-3 at 3-4.

On February 12, 2024, the Petitioner filed a response, wherein he contends that: (1) the Petitioner has exhausted his administrative remedies because the BOP acting through officials at the institutional and regional levels failed to timely respond to his grievances; and (2) a final order of removal does not disqualify the Petitioner from First Step Act time credits being applied toward his offense. ECF No. 24. The Petitioner requests that the Court order the BOP to apply his First Step Act Earned Time Credits and further asks that the Court deny the motion to dismiss. Attached to the Petitioner's response are the following exhibits:

(1)   FCI Hazelton "Lockdown Status" Memo dated December 21, 2023, "FSA Time Credit Assessment," and "FSA Recidivism Risk Assessment (PATTERN 01.03.00)" for the Petitioner [ECF No. 24-1];

(2)   Remedy ID Number 1174830-A1 Rejection Notice dated January 10, 2024, with the remark, "Region provided response 12-22-2023. Resubmit with BP-10 response," and "Central Office Administrative Remedy Appeal" for Case Number 1174830 [ECF No. 24-2];

6

(3) Remedy ID Number 1174830-R1 "Regional Administrative Remedy Appeal" dated December 22, 2023, which states, "[o]ur review of your file reveals Immigration and Customs Enforcement filed a detainer indicating you have a final order of removal; therefore, Federal Time Credit may not be applied," and "Regional Administrative Remedy Appeal" for Case Number 1174830-R1 [ECF No. 24-3]; and

(3)   Remedy ID Number 1174830-F1 "Request for Administrative Remedy'" denial dated October 16, 2023, which states, "[a] final order of deportation has been issued by the Immigration and Customs Enforcement agency in conjunction with your ICE detainer. In accordance with PS5410.001, ICE detainers with a final deportation order are not eligible to have FTCs applied toward their sentence computation. Based on this information, you are not eligible for the Federal Time Credits to be applied toward your sentence computation. Your request is denied." [ECF No. 24-4 at 1]; "Request for Administrative Remedy" Case Number 1174830-F1 [Id. at 2]; and "Request for Administrative Remedy Informal Resolution Form" [Id. at 3].

On February 26, 2024, the Respondent filed a reply which asserts that in his response the Petitioner failed "to raise any substantive legal arguments to refute the arguments set forth in Respondent's Motion." ECF No. 26 at 2.

### III.   STANDARD OF REVIEW

#### A.   Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules

Governing Section 2255 Cases in the U.S. District Courts.

### B.    Pro Se Litigants.

Courts must read *pro* se allegations in a liberal fashion and hold those *pro* se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing
> of, and waste of judicial and private resources upon, baseless
> lawsuits that paying litigants generally do not initiate because
> of the costs of bringing suit and because of the  threat  of
> sanctions  for  bringing  vexatious  suits under Federal Rule
> of Civil Procedure 11. To this end, the statute accords judges
> not only the authority to dismiss a claim based on an
> indisputably meritless legal theory, but also the unusual power
> to pierce the veil of the complaint's factual allegations and
> dismiss those claims whose factual contentions are clearly
> baseless.

490 U.S. at 327.

### C.    Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method for a prisoner to

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser v. Rodriguez, 411 U.S. 475, 498–499 (1973). "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

###    D.    Exhaustion of Administrative Remedies

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[7] addresses the Bureau's Administrative Remedy Program, and directs inmates on the processes necessary to exhaust their administrative remedies by filing four mandatory[8] remedies: (1) an informal resolution (BP-8)[9]; (2) an administrative remedy at the facility (BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central office (BP-11). Failure to complete all four mandatory remedies is fatal to a claim based on the inmate's failure to exhaust administrative remedies.

The Fourth Circuit recognizes the process that inmates must follow to exhaust administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the

---

[7] See https://www.bop.gov/policy/progstat/1330_018.pdf.

[8] Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution. BOP PS 1330.18 § 542.13.b.

[9] Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP–9 form. The BP–8 and BP–9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

**E.   Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion  to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed

in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

**F.      Motions for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

### A.    Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available

administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634–35 (2d Cir. 2001), Little v. Hopkins, 638 F.2d 953, 953–54 (6th Cir. 1981)). Exhaustion as provided in § 1997e(a) is mandatory. regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' " Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of cause and prejudice. The Petitioner claims that he exhausted his administrative remedies at the institutional and agency levels, but has failed to provide documents to demonstrate his exhaustion. ECF No. 1 at 6–7. However, the Respondent argues that the records for the Bureau of Prisons demonstrate that the Petitioner was ***in the process*** of exhausting his administrative remedy on this matter, but ***had not completely exhausted*** his claim prior to filing suit. ECF No. 18 at 7. As to the process for exhaustion, Respondent argues that an inmate "is only deemed to have exhausted his administrative remedies when he has filed a complaint at all levels." Id. at 6.

As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served
> by requiring that, absent a showing of cause and prejudice,

appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.

Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The Petitioner admits that he failed to exhaust his available administrative remedies [ECF No. 1 at 5], and the exhibits submitted by the parties support that contention. Although the Petitioner initiated the administrative remedy process through the institutional and regional levels, he fails to demonstrate that he filed a BP-11 administrative remedy request with the Central Office, and received a dispositive response to that request, in compliance with the Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq., regarding the exhaustion of administrative remedies prior to filing his petition herein.

Further, as to the Petitioner's contention that he attempted to exhaust his administrative remedies, a review of the exhibits of the parties is dispositive. A review of the Petitioner's exhibits shows that as recently as January 10, 2024, he received a rejection notice from the Central Office because he failed to submit required paperwork. He was directed to resubmit his appeal "in proper form within 15 days of the date of [the] rejection notice." ECF No. 24-2 at 1. However, merely submitting an administrative

15

remedy, without receipt of a substantive disposition, does not satisfy the requirement of exhaustion, mandated by Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.

It is clear that the Petitioner has failed to exhaust all administrative remedies available to his claim that he is eligible for the application of Earned Time Credits under the FSA. Such a failure to exhaust may be excused for cause and prejudice, however, the Petitioner has not alleged or demonstrated either. The petition does not allege that the Petitioner was denied access to the forms necessary to file his administrative remedies, or that staff failed or refused to submit those forms once prepared by the Petitioner, or any other basis on which he was deprived of the opportunity to submit administrative remedy forms. Accordingly, the undersigned finds that no cause or prejudice exists to excuse the Petitioner's failure to exhaust. The Petitioner submitted in his Response to the motion to dismiss exhibits which demonstrate he filed BP-8, BP-9, BP-10, and BP-11 administrative remedy forms which are required to exhaust pursuant to 28 C.F.R. § 542.13-.15, and BOP Program Statement 1330.18 § 542.10 et seq. However, the submitted forms demonstrate that he did not exhaust his remedies by receiving a dispositive response from the Central Office before filing this action.

Accordingly, were the Court to consider Petitioner's claim under § 2241, it is clear that this Court is without jurisdiction to consider the merits of his petition because the Petitioner failed to exhaust his administrative remedies prior to filing this action. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348,

359 n.10 (4th Cir. 1999).

**B.    Petitioner is Not Eligible to Earn Time Credits Under the First Step Act and is Not Entitled to Relief on the Merits[10]**

The Petitioner contends that he is entitled to early release from incarceration based on his Earned Time Credits under the First Step Act. However, the Respondent counters that based on Petitioner's final order of removal, he is ineligible to earn Time Credits. ECF No. 18 at 1, 5, 7–10.

The method of earning time credits under a risk and needs assessment system pursuant to the First Step Act is codified at 18 U.S.C. § 3632, which provides in part:

> **(E)   Deportable prisoners ineligible to apply time credits.-**
>
> **(i) In general.** -- A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).
>
> **(ii)   Proceedings.** -- The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

Respondent further argues that the Petitioner's order of deportation and removal is entitled to a presumption of regularity. ECF No. 8 at 3.

The Supreme Court has noted, "that a presumption of regularity attaches to the

---

[10] Although the petition should be dismissed due to Petitioner's failure to exhaust, the undersigned will address the Petitioner's claim as if exhaustion had occurred.

actions of Government agencies, [ ] and that some deference to agency disciplinary actions is appropriate." U.S. Postal Serv. v. Gregory, 534 U.S. 1, 10, 122 S. Ct. 431, 436 (2001) (citing United States v. Chemical Foundation, Inc., 272 U.S. 1, 14–15, 47 S.Ct. 1 (1926)). See also Nardea v. Sessions, 876 F.3d 675, 680 (4th Cir. 2017) (Fourth Circuit presumed that, absent clear evidence showing otherwise, the government necessarily obtained the Argentinian citizen's waiver to challenge any subsequent removal order. "To hold otherwise would flip the 'presumption of regularity' on its head and have us presume that every entry is irregular'").

A government record submitted by the Respondent shows that a final order of removal was filed against the Petitioner, and that his identity was confirmed through biometric records, and through a records check of federal databases.  ECF No. 18-5. That  document, "Department of Homeland Security Immigration Detainer – Notice of Action" shows that the Petitioner is a removeable alien, and is signed by deportation officer Achilles S. Shinas. Id.

Further, a review of the transcript of the sentencing hearing from the Southern District of New York, shows that the Petitioner was well aware that he was subject to deportation, and has already once been deported and returned illegally to the United States. S.D.N.Y 1:19-CR-360, ECF No. 89. The plea agreement and judgment from the Southern District of New York further confirm that the Petitioner was subject to the immigration laws, and during the sentencing hearing his counsel conceded that the Petitioner was awaiting deportation. S.D.N.Y 1:19-CR-360, ECF Nos. 45-3, 85. Moreover, in pro se documents filed in that case the Petitioner conceded that he was a "deportable illegal alien." S.D.N.Y 1:19-CR-360, ECF No. 101 at 9. In this proceeding, the Petitioner has contested that he is an illegal alien subject to deportation, and asserts

that he is only alleged to be subject to a final order of removal. ECF No. 1-1 at 3 - 4. However, in other proceedings the Petitioner has acknowledged his status which he contests here. Moreover, the detainer filed by the Respondent does not merely state that the Petitioner is "subject" to a final order of removal, the detainer states that a final order of removal has been filed against the Petitioner. ECF No. 18-5.

Pursuant to the holdings of <u>Gregory</u>, <u>Chemical Foundation, Inc.</u>, and <u>Nardea</u>, the presumption of regularity attaches to the actions of Government agencies, and deference should be granted to the actions of those agencies.

Accordingly, it appears to the undersigned that the Respondent has demonstrated that the Government agency which documented the Petitioner's status as an alien subject to deportation is entitled to a presumption of regularity. The Petitioner has failed to demonstrate by clear evidence showing otherwise that he is not subject to deportation and is therefore unable to rebut the presumption of regularity. The undersigned therefore determines the Petitioner is a deportable alien. Moreover, under the clear provisions of the statute, 18 U.S.C. § 3632(E), based on the Petitioner's status as a deportable alien, he is ineligible to earn time credits toward his sentence under the First Step Act. For all of the above reasons, the undersigned finds that the Petitioner is not entitled to relief on the merits of his claim which should be dismissed with prejudice.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE** because the Petitioner failed to exhaust his administrative remedies prior to filing this petition under § 2241.

It is further **RECOMMENDED** that the Respondent's motion to dismiss [ECF No. 14] be **GRANTED.**

The Petitioner shall have **fourteen (14) days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record by electronic means.

**DATED:**   April 11, 2024

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE